UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DANIEL RAY CLARK, | ) Civil Action No.: 4:16-cv-0239-RBH-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) **REPORT AND RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security; | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, finding that Plaintiff's disability ended as of May 31, 2011. The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## I. RELEVANT BACKGROUND

### A.   Procedural History

In a February 6, 2009 bench decision, ALJ Gregory M. Wilson found Plaintiff disabled and entitled to disability insurance benefits (DIB) as of the September 29, 2008, but stated that Plaintiff's claim should be reviewed in one year as medical improvement was quite possible with treatment. (Tr. 108-13). On May 20, 2011, the agency performed a continuing disability review (CDR) and determined that Plaintiff had medically improved and, as of May 31, 2011, was no longer disabled within the meaning of the Act. (Tr. 114-19). On reconsideration, a state agency disability hearing officer upheld this determination after a disability hearing. (Tr. 122-33). Plaintiff then filed a request

for a hearing before an ALJ. (Tr. 134). On May 15, 2014, Plaintiff, who was represented by counsel, and a vocational expert (VE) testified at a hearing before the ALJ. (Tr. 47-76). On September 17, 2014, the ALJ found that medical improvement occurred as of May 31, 2011, and that Plaintiff was not disabled as of this date. (Tr. 24-46). The Appeals Council denied Plaintiff's subsequent request for review (Tr. 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff filed an action in this court on January 25, 2016.

**B.     Plaintiff's Background and Medical History**

    **1.     Introductory Facts**

Plaintiff was born on December 13, 1973, and was 37 years old on May 31, 2011, the medical improvement date. (Tr. 39). Plaintiff has at least a high school education and past relevant work as a welder, heavy equipment operator, and truck driver. (Tr. 39). He was previously found disabled due to three back surgeries. (Tr. 108, 113).

    **2.     Relevant Medical Evidence**

        **a.     Medical Records**

On January 16, 2009, Plaintiff visited J. Reilly Keiffer, D.O. for persistent low back pain and left lower extremity pain complaints with a history of disk herniation and status-post microdiscectomy in June 2008. (Tr. 288-90). Plaintiff noted that Lortab provided satisfactory pain relief. (Tr. 288). Plaintiff also noted taking Klonopin for anxiety. (Tr. 288). An October 2008 lumbar spine MRI revealed an annular fissure at L3/L4, small disk bulging at L3/L4, no evidence of recurrent disk herniation at L4/L5, no significant central stenosis, and some disk bulging with facet changes at L5/S1. (Tr. 289). On examination, Plaintiff was pleasant, cooperative, alert, oriented, and in no acute distress; could heel and toe-stand; and had an antalgic gait, 5/5 (full) strength in his

lower extremities with no focal weakness, some reduced lumbar range of motion, normal muscle tone, a positive left straight leg raise test but negative right straight leg raise test, and no tenderness to palpation in his lumbar paraspinal muscles. (Tr. 289). Dr. Keiffer assessed Plaintiff with left lower extremity radiculopathy at L5 and no current low back pain. (Tr. 289). Dr. Keiffer suggested medication management and physical therapy. (Tr. 290).

From February 2009 to December 2010, Plaintiff continued treatment with Dr. Keiffer and Joseph McTavish, a physician assistant working with Dr. Keiffer. (Tr. 267-76, 282-87). Plaintiff consistently denied lumbar pain, and reported doing well on pain medication. (Tr. 268-69, 272-76, 283-87). Plaintiff also reported having an exercise plan in February, June, July, August, and September 2009, i.e., "walking about a mile a day several days per week," (tr. 287), "doing about a mile and a half on an incline treadmill on a regular basis," (tr. 284), and "now walking two miles a day seven days a week," (tr. 282).

On examinations, despite occasional positive straight leg raise test on the left and reported use of a cane in August 2010, Plaintiff was alert, oriented, pleasant, conversational, in good spirits, and in no acute distress; could heel- and toe-stand; and had a normal affect, a mostly normal gait, mostly no tenderness to palpation in the lumbar parapsinal muscles, and 5/5 (full) strength in his lower extremities. (Tr. 267-76, 282-87). Plaintiff was assessed with chronic left lower extremity L5 radiculopathy/radiculitis with no low back pain that improved (but flared in cold weather). (Tr. 267-76, 282-87). He was initially given Lortab but switched to Norco with a goal of weaning himself off pain medication and was encouraged to continue exercising. (Tr. 267, 270-76, 282-87). Dr. Keiffer encouraged Plaintiff to set goals of receiving more education and eventually returning to work. (Tr. 273).

On February 28, 2011, Plaintiff visited Lee Ashley Mullinax, M.D., with left leg pain complaints. (Tr. 349). Plaintiff reported walking daily and doing nightly stretches (Tr. 349). He also reported no significant back pain. (Tr. 349). He added that walking, exercise, and Lortab made his pain better. (Tr. 349). On examination, Plaintiff was in no acute distress, alert, and oriented, and no pain with back extension and flexion, mild pain with left facet loading, pain over his gluteal muscles, decreased sensation to light touch in L4 and L5 distribution in left leg above the knee, and 5/5 (full) lower extremity strength. (Tr. 349). Dr. Mullinax assessed Plaintiff with chronic left leg pain secondary to L4/5 radiculopathy and stable chronic low back pain (Tr. 349). He refilled Plaintiff's Norco prescription. (Tr. 349).

On March 18, 2011, after examination, Kurt L. Gandenberger, M.D., of Doctor's Care noted that Plaintiff had anxiety, insomnia, and panic but that medications helped his condition. (Tr. 299). On examination, Dr. Gandenberger found that Plaintiff was oriented but worried/anxious, and had appropriate thought content and adequate attention/concentration, but racing and distractible thoughts and poor memory. (Tr. 299). He opined that Plaintiff had "obvious" work limitations due to his mental condition. (Tr. 299).

On March 30 and April 27, 2011, Plaintiff had medication re-checks with Dr. Mullinax, who refilled Plaintiff's Norco prescription. (Tr. 345-48). Plaintiff reported an increase in his walking. (Tr. 345).

On May 25, 2011, Plaintiff returned to Dr. Mullinax with complaints of back pain and left-sided radicular pain. (Tr. 343-44). Plaintiff denied any psychological complaints. (Tr. 343). Plaintiff reported satisfactory control of his pain. (Tr. 343). On examination, Plaintiff was in no acute distress; walked with a cane; and had equal pain with extension and flexion of his back worse

in left paraspinal muscles, 5/5 (full) lower extremity strength, and normal sensation to light touch except in the S1 distribution in left leg. (Tr. 343). Dr. Mullinax assessed Plaintiff with low back pain and neuritis/radiculitis, and increased Plaintiff's Norco pain medication. (Tr. 343-44).

From June 2011 to Plaintiff's discharge for a positive drug test showing amphetamine and methamphetamine use, Plaintiff continued treating with Dr. Mullinax for his back and leg pain. (Tr. 325-26, 338-39, 341-42, 372-73, 398-406, 419, 422, 424-28, 430-31, 433, 449). He received multiple epidural steroid injections and radio frequency ablations, which helped relieve some pain. (Tr. 325-26, 341, 430-31, 449). Plaintiff reported being happy with his pain control and that Norco alleviated most of it. (Tr. 341, 398, 402, 422, 425, 428, 431). On examinations, Plaintiff was in no acute distress, alert, oriented, and conversational, and had a normal affect, normal speech, a normal gait (but sometimes walked with a cane), tenderness to palpation and muscle spasms in his low back, good range of motion with low back extension or flexion, occasional left leg radicular symptoms, some tenderness in the left gluteal region, and mostly 5/5 (full) lower extremity muscle strength. (Tr. 341, 373, 398, 400, 402, 422, 425, 428, 430-31). Dr. Mullinax assessed Plaintiff with neuritis/radiculitis, lumbosacral spondylosis, lumbar disc degeneration, low back pain, and muscle spasms, and continued Plaintiff's Norco and Flexeril (eventually discontinued) prescriptions. (Tr. 341-42, 373, 398-02, 422, 424-28, 430-31, 433, 436).

On July 14, 2011, Plaintiff visited James Morrison, M.D., for medication refills. (Tr. 332). Dr. Morrison diagnosed Plaintiff with chronic low back pain, anxiety with depressive symptoms, and insomnia. (Tr. 332). Plaintiff was given anxiety medication with instructions for no refills. (Tr. 332).

On August 18, 2011, Plaintiff visited Jeffrey Smith, M.D., with anxiety complaints. (Tr.

-5-

327-29). On examination, Plaintiff had an anxious but stable mood and psychomotor agitation, but he had a bright affect, no mania or psychosis, no suicidal or homicidal ideations, no cognitive deficits, normal concentration and focus, average insight and judgment, normal speech, a normal gait, and logical and goal-oriented thought processes. (Tr. 328). Plaintiff was assessed with anxiety disorder, not otherwise specified and a Global Assessment of Functioning (GAF) score of 61 (indicating only mild symptoms or difficulties). (Tr. 328). Plaintiff was given anxiety medications. (Tr. 328).

From January 2012 to April 2014, Plaintiff treated with Physician Assistant Joseph Friddle due to anxiety and pain. (Tr. 453-62). He consistently reported that his anxiety was better and manageable. (Tr. 453, 455, 457-58, 460, 462). On examinations, Plaintiff had an anxious but stable mood and psychomotor agitation, but he had a bright affect, no mania or psychosis, no suicidal or homicidal ideation, normal concentration and focus, average judgment and insight, a normal gait, normal speech, and logical thought processes. (Tr. 453, 455, 457-58, 460, 462). Plaintiff was assessed with anxiety disorder, not otherwise specified and GAF scores of 65 (indicating only mild symptoms or difficulties). (Tr. 453, 455, 457-58, 460, 462). Plaintiff was treated with anxiety medication and Neurontin (pain medication), which he stated controlled his pain well. (Tr. 453, 455, 457-58, 460, 462).

Plaintiff had a May 2014 lumbar spine MRI that showed L3-4 through L5-S1 disc degenerative changes, no disc herniation, a congenitally small spinal canal due to short pedicle syndrome, and previous posterior spinous limitations at L3-4 and L4-5. (Tr. 465).

### b.     Medical Opinions

On May 18, 2011, state agency physician Dr. Van Slooten opined that Plaintiff could

occasionally lift and carry fifty pounds, frequently lift and carry twenty-five pounds, and stand and/or walk and sit for six hours each in an eight-hour workday. (Tr. 302). He added that Plaintiff could frequently climb ramps and stairs, balance, kneel, crouch, and crawl, and occasionally stoop and climb ladders, ropes, or scaffolds. (Tr. 303). He further opined that Plaintiff should avoid concentrated exposure to hazards (machinery, heights, etc.). (Tr. 305). Upon reconsideration, State agency physician Dr. Weston agreed with Dr. Van Slooten's conclusions. (Tr. 365-68).

On May 19, 2011, state agency psychologist Dr. Calhoun opined that Plaintiff's mental impairments were not severe (anxiety and panic disorder). (Tr. 309, 314). He added that Plaintiff had no restriction of daily activities or difficulties in maintaining social functioning and only mild difficulties in maintaining concentration, persistence, or pace. (Tr. 319).

On November 14, 2011, another state agency psychologist, Dr. Rogers-Hicks, opined that Plaintiff's mental impairments (anxiety and depression) were not severe. (Tr. 350, 353, 355). She added that Plaintiff had mild restriction of daily activities and difficulties in maintaining social functioning, concentration, persistence, and pace. (Tr. 360).

        **c.**     **Fraud Investigation**

On April 20, 2011, the Cooperative Disability Investigations Unit (CDIU) initiated an independent fraud investigation of Plaintiff. (Tr. 258). The state agency referred this case to the CDIU regarding Plaintiff's physical impairment for a field investigation to obtain independent third party functioning information. (Tr. 258). CDIU Special Agent Ted Shealy subsequently conducted a business canvass of the convenience stores near Plaintiff's address and found that Plaintiff frequented three local convenience stores. (Tr. 259-60, 262-63). Upon investigation, Special Agent Shealy discovered that Plaintiff was a regular customer, walked fine without a limp or use of a cane,

pushed a loaded cart, bent to the ground to pick up dropped items, and opened the door. (Tr. 259-60, 262-63).

Special Agent Shealy also visited Plaintiff's residence under the pretense that he had information that Plaintiff might have information about a wanted fugitive. (Tr. 261-62). Upon arrival, Plaintiff walked to Special Agent Shealy's car without a limp, along with his girlfriend, Erica Rosser. (Tr. 261). Special Agent Shealy, Plaintiff, and Ms. Rosser talked for approximately forty-five minutes while standing by his car. (Tr. 261). Special Agent Shealy twice observed Plaintiff walk to his residence, up six or seven stairs, and open the door, without any pain or discomfort. (Tr. 261). Plaintiff also leaned over to use the hood of Special Agent Shealy's car to write down his information without any pain or discomfort. (Tr. 261). Plaintiff also admitted to hunting and fishing during the conversation. (Tr. 261).

### C.     The ALJ's Decision

In the decision of September 17, 2014, the ALJ made the following findings of fact and conclusions of law:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated February 6, 2009. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairment: lumbar degenerative disk [sic] disease. This impairment was found to result on the claimant having the residual functional capacity for less than a full range of sedentary exertional activities.

3. Through May 31, 2011, the date the claimant's disability ended, the claimant did not engage in any substantial gainful activity (20 CFR 404.1594(f)(1)).

4. The medical evidence establishes that, as of May 31, 2011, the claimant had the following medically determinable impairments: lumbar degenerative

-8-

>   disk [sic] disease, obesity, anxiety, and panic attacks.

5.  Since May 31, 2011, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6.  Medical improvement occurred as of May 31, 2011 (20 CFR 404.1594(b)(1)).

7.  As of May 31, the impairment present at the time of the CPD had decreased in medical severity to the point where the claimant had the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, to sit, stand, and/or walk for about 6 hours in an 8 hour workday, with an ability to push and pull with his lower extremities only occasionally, an ability to stoop and climb ladders, rope or scaffolds occasionally as well, and with the claimant needing to avoid concentrated exposure to hazards.

8.  The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

9.  As of May 31, 2011, the claimant continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

10. Based upon the impairments present as of May 31, 2011, the claimant had the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, to sit, stand, and/or walk for about 6 hours in an 8 hour workday, with an ability to push and pull with his lower extremities only occasionally, an ability to stoop and climb ladders, rope or scaffolds occasionally as well, and with the claimant needing to avoid concentrated exposure to hazards.

11. As of May 31, 2011, the claimant was unable to perform his past relevant work (20 CFR 404.1565).

12. On May 31, 2011, the claimant was a younger individual age 18-49 (20 CFR 404.1563).

13. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

14. Beginning on May 31, 2011, transferability of job skills is not material to the determination of a disability because using the Medical-Vocational Rules as

>     a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 15. As of May 31, 2011, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present as of May 31, 2011, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).
>
> 16. The claimant's disability ended as of May 31, 2011 (20 CFR 404.1594(f)(8)).

(Tr. 29-40).

## II. DISCUSSION

The Plaintiff argues that the ALJ erred in his decision, and that reversal and remand are appropriate in this case. Specifically, Plaintiff alleges that the ALJ erred by (1) failing to consider and discuss the relevant factors for analyzing pain, (2) failing to give weight to the opinion of Dr. Gandenberger, (3) disregarding the testimony of his girlfriend, and (4) disregarding a second hypothetical posed to the VE.

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.     LEGAL FRAMEWORK

#### 1.     The Commissioner's Continuation of Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled ..." 20 C.F.R. § 404.1594(b)(1). Such a finding must be based on "changes (improvement) in the symptoms, signs and/or laboratory findings associated with the impairments." Id. To determine whether medical improvement has occurred, the severity of the claimant's current medical condition is compared to the severity of the condition "at the time of the most recent favorable medical decision that [the claimant was] disabled." Id.

When determining whether a claimant who has previously been found to be disabled continues to be disabled under applicable regulations, the ALJ is required to apply an eight-step sequential evaluation process. See 20 C.F.R. § 404.1594. The eight-step process provides: (1) if the claimant is currently engaging in substantial gainful activity, disability ends; (2) if the claimant has an impairment or combination of impairments that meets or medically equals a listing, disability continues; (3) if the claimant does not meet or equal a listing, the ALJ will determine whether "medical improvement" has occurred; (4) if medical improvement has occurred, the ALJ will determine whether the improvement is related to the claimant's ability to work; (5) if there is no medical improvement—or the medical improvement is found to be unrelated to the claimant's ability to work—disability continues; (6) if there has been medical improvement related to the claimant's ability to work, the ALJ will determine whether all of the current impairments, in combination, are "severe," and if not, disability ends; (7) if the claimant's impairments are considered "severe," the ALJ will determine the claimant's RFC, and if the claimant is able to perform past relevant work, disability ends; (8) if the claimant remains unable to perform past relevant work, the ALJ will determine whether the claimant can perform other work that exists in

the national economy given his or her residual functional capacity, age, education, and past relevant work experience. See 20 C.F.R. § 404.1594(f)(1)-(8).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. See id.; Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Walls, 296 F.3d at 290 (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." Vitek v. Finch, 438 F.2d 1157, 1157–58 (4th Cir.1971); see Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir.1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390, 401; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir.2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. See Vitek, 438 F.2d at 1157–58; see also Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972).

B.     ANALYSIS

    1.     **Credibility Determination Regarding Subjective Complaints of Pain**

Plaintiff argues that the ALJ failed to consider and discuss the factors contained in 20 CFR § 404.1529(c)(3) for analyzing his subjective complaints of pain.  a two-step process is required when assessing the credibility of a claimant's subjective pain complaints. 20 CFR § 404.1529; Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). First, Plaintiff must provide objective medical evidence showing a medical impairment that could reasonably be expected to produce the pain. 20 CFR § 404.1529(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent that they limit Plaintiff's ability to do basic work activities. 20 CFR § 404.1529(c).  "Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms . . . ." 20 CFR § 404.1529(c)(2) Other relevant information includes what may precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 CFR § 404.1529(c)(3).

    In his decision, the ALJ first discussed that, at the time of the CPD, February 6, 2009,

> Plaintiff's degenerative disk [sic] disease and chronic back pain limited him to sitting for no more that 4 hours in a regular workday, and standing and/or walk for no more than two hours out of 8 (Exhibit B1A).  Thus, the claimant was unable to perform full time work in the national economy on a sustained basis.  However, the evidence clearly shows that, as of May 31, 2011, medical improvement had led to a decrease in the medical severity of the impairment present at the CPD.

(Tr. 34).  The ALJ discussed that Plaintiff reported in July of 2009 to April of 2011 that he was consistently exercising, i.e., walking a mile and a half on an incline daily and later walking two miles a day every day. (Tr. 34). The ALJ also noted that Plaintiff reported no significant back pain at times and stated that he was pleased with his pain control, including relief from pain medications,

and that he was able to take less pain medication to gain relief. The ALJ also noted that Plaintiff reported no side effects from his medication. (Tr. 34).

Plaintiff argues that the ALJ failed to consider the appropriate factors as of May 31, 2011, although he points to no medical records that the ALJ failed to consider. He also argues that the ALJ failed to consider his obesity, anxiety and panic attacks as they relate to his pain. Again, Plaintiff fails to point to any medical records indicating a relation between his obesity, anxiety, and/or panic attacks to his pain. In addition, the ALJ stated,

> At the 2014 hearing, the claimant testified that he was 6 feet tall and weighed about 248 pounds. Mr. Clark further testified that he [sic] weight had been stable over the past several years. <u>He asserted at this hearing that he did not consider his weight to cause him any limitations at all</u>. I take the claimant at his word.

(Tr. 29). The ALJ also discussed Plaintiff's anxiety and panic attacks with a thorough discussion of his treatment from 2006 through 2014, as well as medical opinions and noted that Plaintiff consistently stated that his anxiety was managable with his medication. (Tr. 30-33).

In sum, the ALJ's findings regarding Plaintiff's subjective complaints of pain are supported by substantial evidence.

### 2.     Medical Opinions

Plaintiff argues that the ALJ failed to give weight to the opinion of Dr. Gandenberger. The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. <u>See</u> 20C.F.R. §§ 416.1527(c). The medical opinion of a treating physician is entitled to controlling weight, i.e. it must be adopted by the ALJ,

if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2), SSR96–2p; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir.2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir.1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270F.3dat 178 (citing Hunter v. Sullivan, 993 F.231, 35 (4th Cir.1992)).

In determining what weight to give the opinions of medical sources, the ALJ must apply all of the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. See SSR 96–2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir.2006).

Furthermore, 20 C.F.R. § 404.1527(d)(2) states: "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." SSR 96–2p requires that "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

Dr. Gandenberger of Doctor's Care Berea found on March 18, 2011, that Plaintiff had racing

-15-

and distractible thoughts, was worried/anxious, and had poor memory but was oriented, had appropriate thought content, and had adequate attention and concentration. (Tr. 299). He also noted that Plaintiff's anxiety, insomnia, and panic were helped with medication. (Tr. 299). Dr. Gandenberger opined that Plaintiff had "obvious" work limitations due to his mental condition. (Tr. 299). However, he provided no further specifics regarding work related limitations that he found to be obvious. (Tr. 299).

As to Dr. Gandenberger's opinion, the ALJ stated,

> I accord this opinion no weight. First, the record does not show that Dr. Gandenberger provided any significant or longitudinal treatment for Mr. Clark's mental impairments. Furthermore, Dr. Gandenberger's opinions contained in this March 2011 form are completely at odds with the rest of the psychologically-relevant evidence. Other mental health providers and consultative examiners have found that the claimant has very little limitation due to his anxiety and occasional panic. I note Dr. Gandenberger does not back up his bald assertions with any test results, mental health exam results, analysis of symptoms or any other supportive data. His unsupported opinion contained in the March 18, 2011, form is worthy of no weight.

(Tr. 32). As stated above, the ALJ thoroughly discussed Plaintiff's mental health treatment. (Tr. 30-33). Plaintiff was consistently pleasant, cooperate, alert, oriented, conversational, and in good spirits, and had a bright and normal affect, normal speech, no mania or psychosis, no suicidal or homicidal ideations, no cognitive deficits, had normal concentration and focus, average insight and judgment, and logical and goal-oriented thought processes. (Tr. 267-76, 282-87, 289, 328, 341, 349, 372, 398, 400, 402, 422, 425, 428, 430-31, 453, 455, 457-58, 460, 462). Plaintiff also specifically denied any psychological complaints in May 2011. (Tr. 343). Plaintiff reported that his anxiety was better and manageable during treatment with Piedmont Psychiatric Services from January 2012 to April 2014. (Tr. 453, 455, 457-58, 460, 462). After the date of medical improvement (May 31, 2011), Plaintiff was repeatedly assessed with GAF scores of 61 and 65 (indicating only mild

symptoms or difficulties). (Tr. 328, 453, 455, 457-58, 460). Consistent with this evidence, both state agency psychologists opined that Plaintiff's mental impairments were not severe (Tr. 309, 314, 350, 353, 355).

As set forth above, "if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir.1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270F.3dat 178 (citing Hunter v. Sullivan, 993 F.231, 35 (4th Cir.1992)). Plaintiff does not dispute a lack of a longitudinal treatment relationship with Dr. Gandenberger, but argues that "the lack of longitudinal treatment suggested by the [ALJ] is no reason to preclude Dr. Gandenberger's professional opinion." (Pl. Brief 3). However, length of treatment is one of the specific factors an ALJ should consider in deciding the weight to be given to a medical opinion. See SSR 96–2p. Plaintiff also argues that the ALJ "insults Dr. Gandenberger by referring to Dr. Gandenberger's opinions as 'bald assertions' without a knowledge of the test, diagnostics or analyses of symptoms Dr. Gandenberger used in completion of the Social Security Administration Form." (Pl. Brief). However, the reason the ALJ did not refer to any tests, diagnostics, or analyses is because Dr. Gandenberger failed to discuss them in his opinion, which the ALJ specifically recognized.

For these reasons, the ALJ's decision to give no weight to the opinion of Dr. Gandenberger is supported by substantial evidence.[1]

---

[1] Plaintiff also appears to challenge the weight given to the November 14, 2011, opinion of the state agency psychologist Dr. Rogers-Hicks. The ALJ gave little weight to her opinion that Plaintiff had mild restriction of daily activities and difficulties in maintaining social functioning, concentration, persistence, and pace. (Tr. 33). Plaintiff argues that this is inconsistent with the May 19, 2011, opinion of state agency psychologist Dr. Calhoun, who

-17-

### 3. Lay Evidence

Plaintiff argues that the ALJ failed to consider the testimony of Plaintiff's live in girlfriend, Erica Rosser. An ALJ is permitted to use evidence from non-medical sources at his discretion. 20 C.F.R. § 404.1513 (stating that an ALJ "may" use evidence from non-medical sources, such as spouses and friends, to determine the severity of an impairment); Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *8 (stating that an ALJ "may" draw credibility inferences and conclusions from family and friends). In considering the testimony of his girlfriend, it is appropriate for an ALJ to consider such factors such as the nature and extent of the relationship, whether the evidence is consistent with the other evidence, and any other factors that tend to support or refute the evidence. SSR 06-03p, 2006 WL 2329939, at *3.

Here, the ALJ noted that Ms. Rosser testified that Plaintiff has severe anxiety and that the anxiety is heightened when he is in pain. (Tr. 30). He further discussed her testimony as follows:

> As to opinions asserted at the hearing level, Ms. Rosser testified at the 2014 hearing. However, she did not render any opinions concerning the claimant's disability. She did assert that the claimant's low back pain had not gotten any better. As the medical evidence discussed above shows, that is not the case. She felt the claimant's leg pain had gotten worse. The medical evidence discussed above persuasively demonstrates that the radiofrequency ablations and epidural steroid injections, along with the claimant's pain medication, has significantly reduced Mr. Clark's lower extremity radicular pain. I accord these opinions by Ms. Rosser no weight.

(Tr. 38).

Plaintiff argues that the ALJ did not indicate the weight he gave to Ms. Rosser's statement that Plaintiff's anxiety increased when he was in pain. However, the ALJ did discuss Ms. Rosser's

---

found no restrictions in the same areas. The ALJ gave this opinion great weight. (Tr. 33). Plaintiff's argument on this point is unclear. However, for the same reasons discussed above, the ALJ's findings with respect to these opinions are supported by substantial evidence.

testimony regarding Plaintiff's pain and gave it no weight as it was inconsistent with the record evidence. Thus, it follows that he gave the remainder of her testimony regarding Plaintiff's anxiety as a result of pain the same weight. The undersigned finds no error here.

### 4.     Hypothetical to the VE

Plaintiff argues that the ALJ improperly disregarded the hypothetical given to the VE by Plaintiff's counsel that included "additional factors/impairments, to wit panic attacks." (Pl. Brief 3). The first hypothetical to the VE, given by the ALJ was as follows:

> Please assume you're dealing with a hypothetical individual the same age as the claimant with the same educational background and past work experience. Further assume that this individual retains the capability of lifting 50 pounds occasionally, 25 pounds frequently, can stand six of eight hours, walk six of eight hours, and sit six of eight hours. Pushing and pulling in the lower extremity would be occasional. Ropes, ladders, and scaffolds would be occasional. Stooping would be occasional. Climbing, balancing, kneeling, crouching, and crawling would be frequent. Hazards, avoid concentrated exposure.

(Tr. 74). The VE testified that such an individual could not perform any of the claimant's past relevant work but there were other jobs in the national economy that the individual could perform. (Tr. 74). Plaintiff's attorney then offered a second hypothetical:

> Hypothetical number two is the same as hypothetical number one. The only modifications is [sic] that this individual would have absences from the workstation. This is something that would occur on a daily basis. The duration of the absences by way of illustration would or could be minutes one day, multiple hours another day. And by way of illustration further, pain may interfere with the ability to attend at the workstation or interfere with the ability to sit or stand at the workstation and would require periods away to rest, lay down, whatever may be necessary.

(Tr. 75). The VE testified that these additional limitations would preclude work. (Tr. 75).

Plaintiff argues that the ALJ failed to take these additional limitations into consideration in forming Plaintiff's RFC, as well as Plaintiff's obesity, anxiety and panic attacks. A hypothetical question need only include limitations that are supported by the record. Walker v. Bowen, 889 F.2d

-19-

47, 50 (4th Cir. 1989); Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir.1991) (ALJ not required to include limitations or restrictions in his hypothetical question that he finds are not supported by the record). Here, the ALJ included a thorough discussion of Plaintiff's medical records and his reasons for finding Plaintiff's obesity, anxiety, and panic attacks not severe and for developing the RFC that he developed. (Tr. 29-33, 35-39).   His decision is supported by substantial evidence.[2]

### III.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court finds that the ALJ's findings are supported by substantial evidence. Therefore, it is RECOMMENDED that the Commissioner's decision be AFFIRMED.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

December 29, 2016  
Florence, South Carolina

---

[2] To the extent Plaintiff has included any other allegations of error not specifically discussed herein, those allegations have not been fully argued or supported by record evidence such that the undersigned could have discussed them.